IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSHUA LIGUORI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:26-CV-505-RP |
| | § | |
| KOMICO TECHNOLOGY, INC., LISA KIM, *in her individual capacity*, and ALBERTO LARA, *in his individual capacity*, | § § § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is Defendants KoMiCo Technology, Inc. ("KoMiCo"), Lisa Kim ("Kim"), and Alberto Lara ("Lara") (collectively, Defendants) Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss, Dkt. 12). Plaintiff Joshua Liguori, proceeding *pro se*, ("Plaintiff") filed a Response in opposition, (Dkt. 20), and Defendants filed a Reply, (Dkt. 21). Also before the Court is Plaintiff's Motion to Proceed Under Pseudonym ("Pseudonym Motion"), (Dkt. 10), and Plaintiff's Motion for Judicial Inquiry into Joint Representation ("Representation Motion"), (Dkt. 15). Defendants responded to both motions, (Dkts. 16, 17). Having considered the parties' submissions, the record, and the applicable law, the Court will grant Defendants' partial motion to dismiss five of the twelve counts brought in Plaintiff's Complaint, (Dkt. 12), deny Plaintiff's Pseudonym Motion, (Dkt. 10), and deny Plaintiff's Representation Motion, (Dkt. 15).

## I. BACKGROUND

Plaintiff filed the instant action on March 2, 2026, alleging twelve causes of action—(1) age discrimination under the Age Discrimination in Employment Act ("ADEA"); (2) retaliation under the ADEA; (3) retaliation and hostile work environment under Title VII; (4) discrimination and retaliation under Texas Labor Code Chapter 21; (5) whistleblower retaliation under the Clean Air

Act, 42 U.S.C. § 7622; (6) wrongful termination under *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985); (7) assault and battery; (8) false imprisonment; (9) defamation; (10) conversion; (11) intentional infliction of emotional distress; and (12) violation of the Texas Payday Law, Texas Labor Code § 61.001 *et seq*. (Compl., Dkt. 1, at 26–35). He alleges that he worked for KoMiCo, a "semiconductor parts cleaning and coating facility," as a "Facilities Engineer," that he was "at all relevant times . . . over 40 years of age," and that he was qualified for his position and was meeting expectations. (*Id.* at 1, 26). Plaintiff was allegedly "responsible for oversight of the Acid Waste Neutralization system" and "possessed direct [] knowledge of KoMiCo's environmental compliance status." (*Id.* at 2).

During his employment, Plaintiff states that he was "subjected to comments indicating he was 'too experienced'" and that he was thought of as "someone who was 'thinking of leaving,'" which Plaintiff understood as a "reflect[ing] a discriminatory attitude towards Plaintiff based on his age and experience level." (*Id.*). He relatedly claims that he was "replaced by a younger individual following his termination" and that "[y]ounger employees received materially more favorable treatment in scheduling, training opportunities, and retention through Plaintiff's employment" at KoMiCo. (*Id.*). Plaintiff also states that he "observed and was subjected to a work environment in which sexually inappropriate comments, discriminatory remarks regarding sexual orientation, and harassing conduct were regularly directed at him and coworkers"; he alleges that he reported sexual harassment.[1] (*Id.* at 3–4, 17). Additionally, Plaintiff asserts that he was "deprived of substantial earned wages" during his employment in KoMiCo when they failed to pay him "agreed-upon overtime premium wages." (*Id.* at 22).

[1] He pleads that a coworker who had made a similar HR report had also been "terminated shortly thereafter under pretextual circumstances." (*Id.* at 3).

Furthermore, Plaintiff pleads that he "identified and reported" certain regulatory violations and was retaliated against for doing so. (*Id.* at 3, 14). For example, Plaintiff states that he "submitted a formal written complaint[2] via email to Defendant Lisa Kim . . . stat[ing] in relevant part" that he believed Lara "instructed employees . . . to manipulate" equipment "in a manner that prevented waste from going into the waste treatment area, creating a permitted outcome that would not have reflected normal conditions. (*Id.* at 12–13). "Within days" after that complaint, Plaintiff alleges that he was "assigned 12-hour shifts covering all major holidays," and he emailed Kim stating that he believed the schedule was "retaliatory." (*Id.* at 14). Subsequently, on December 24, 2025, Plaintiff "documented visible emissions from a KoMiCo facility stack," and he "photographed KoMiCo's CEO . . . observing what appeared to be a NOx emissions test at the facility."[3] (*Id.* at 15).

That same date, Plaintiff was "called into a termination meeting." (*Id.* at 19). Plaintiff states that during the termination meeting, he "stood to leave . . . after being informed of his termination." (*Id.* at 19). According to Plaintiff, as he moved towards the exit, Kim "demanded his badge and access keys and stated that he could not leave. Plaintiff told her that he did not have those items. [He] had a door-pull tool hanging from his belt loop" that he "used to open the office door to exit." (*Id.*). Kim then "reached towards Plaintiff's belt loop area to retrieve the door-pull tool" and "[i]n doing so, made direct, unwanted physical contact with Plaintiff's genitals." (*Id.*). Kim, Lara, and KoMiCo's CEO then allegedly "blocked Plaintiff's access to the exit" and told him he could not leave. (*Id.* at 19–20). He appears to have then "navigated around" them "exit[ed] the building" but was unable to retrieve some of his personal property, including his "prescription glasses" and other personal items. (*Id.* at 20–21). After Plaintiff's termination, his loss of income caused him to be unable to obtain final loan approval to proceed with a home purchase, causing him to lose his

---

[2] Plaintiff asserts that this complaint "constituted protected activity" under the Clean Air Act, Title VII, and Texas Labor Code. (*Id.* at 13).

[3] Plaintiff does not define what "NOx" stands for.

deposits and opportunity to purchase the home. (*Id.* at 24). Plaintiff "initiated EEOC proceedings . . . asserting age discrimination, sex discrimination, and retaliation under the ADEA, Title VII, and Texas Labor Code Chapter 21." (*Id.* at 6). He states that he "satisfied or is in the process of satisfying his administrative exhaustion obligations. [His] Title VII and Chapter 21 claims are incorporated herein and will be supplemented upon receipt of a Notice of Right to Sue, or [he] will seek leave to amend at the appropriate time."[4] (*Id.*).

Defendants have now filed a motion to dismiss Plaintiff's (1) ADEA retaliation claim; (2) Title VII claims; (3) Texas Labor Code Chapter 21 claims; (4) *Sabine Pilot* wrongful termination claim; and (5) intentional infliction of emotional distress claim. (Mot. to Dismiss, Dkt. 12, at 5–6).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

---

[4] In Plaintiff's Response, he attaches an "EEOC Inquiry," rather than an EEOC charge. (EEOC Inquiry, Dkt. 20-1).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

### A. Motion to Dismiss Under 12(b)(6)

#### i. ADEA Retaliation Claim

Defendants first move to dismiss Count II, Plaintiff's ADEA retaliation claim. To establish a claim for retaliation under the ADEA, the plaintiff must show that (1) he engaged in a protected activity; (2) there was an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1226 (5th Cir. 1996). "The plain language of § 623(d) prohibits an employer from retaliating against an employee because 'such individual' has opposed a practice prohibited by the ADEA or has participated 'in any manner'

in a proceeding under the ADEA." *Id.* Plaintiff alleges that he engaged in protected activity by making compliance complaints and making complaints regarding sexually inappropriate or homophobic comments, and that he experienced retaliation in the form of a change to his working schedule. (*See* Compl., Dkt. 1, at 12–14, 16–17). None of these complaints relate to age discrimination; therefore Plaintiff did not "oppose[] a practice prohibited by the ADEA." *See Holt*, 89 F.3d at 1226. Though he alleges that coworkers described him as "too experienced" and made other age-based comments, he never alleges that he reported these comments or otherwise engaged in age-related protected activity during his employment.[5] Notably, Plaintiff's charge of discrimination to the Equal Employment Opportunity Commission ("EEOC") was submitted two days after his termination, meaning there could not be a "causal connection," *see id.*, between the complaint and the alleged adverse action. The Court will therefore dismiss Plaintiff's ADEA retaliation claim.

**ii. Title VII Claims**

Next, Defendants move to dismiss Plaintiff's Title VII claims on the grounds that he had not filed an EEOC charge of discrimination or filed a Right to Sue letter at the time he filed this action. (Mot. to Dismiss, Dkt. 12, at 11). To administratively exhaust a Title VII claim, a plaintiff must "file a timely charge with the EEOC and then receive a notice of the right to sue." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002)). Plaintiff's Complaint states merely that he "satisfied or is in the process of satisfying his administrative exhaustion obligations" and that his claims "will be supplemented upon receipt of a Notice of Right to Sue, or [he] will seek leave to amend at the appropriate time."[6]

---

[5] In Plaintiff's Response, he points to an email he sent to Kim on October 2, 2025, which was attached to his Complaint. (Resp., Dkt. 20, at 2–3; October 2025 Email, Dkt. 1-18). But this email and the conversation it discusses contain no reference to Plaintiff's age or any details which allow the Court to plausibly infer that the conversation was related to age.

[6] In Plaintiff's Response, he attaches an "EEOC Inquiry," rather than an EEOC charge. (EEOC Inquiry, Dkt. 20-1).

(Compl., Dkt. 1, at 6). Moreover, in his Response, Plaintiff attaches "EEOC Inquiry," rather than an EEOC charge. (EEOC Inquiry, Dkt. 20-1). He also states that he had an EEOC intake appointment scheduled and had a "charge-filing deadline of July 29, 2026." (Resp., Dkt. 20, at 4). Plaintiff therefore has not yet administratively exhausted his Title VII claims, and the Court will dismiss them without prejudice.

**iii. Texas Labor Code Chapter 21 Claims**

As with Plaintiff's Title VII claims, Plaintiff states that he is "in the process of satisfying his administrative exhaustion obligations" for his Texas Labor Code Chapter 21 claims. (Compl., Dkt. 1, at 6). He affirms that he has not yet filed an official charge on this claim in his Response. (Resp., Dkt. 20, at 4). The Court will therefore dismiss Plaintiff's Texas Labor Code Chapter 21 claims without prejudice.

**iv. *Sabine Pilot* Wrongful Termination Claim**

Under *Sabine Pilot*, it is an exception to the at-will employment doctrine in Texas that an employee was "discharge[d] . . . for the sole reason that the employee refused to perform an illegal act." *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985). The Supreme Court of Texas has emphasized that this is a narrow exception: "An employer who discharges an employee both for refusing to perform an illegal act and for a legitimate reason or reasons cannot be liable for wrongful discharge." *Tex. Dep't of Hum. Servs. of State of Tex. v. Hinds*, 904 S.W.2d 629, 633 (Tex. 1995).

Defendants argue that Plaintiff has solely alleged that he "refused to participate in . . . conduct he reasonably and in good faith believed constituted violations of regulatory requirements—specifically, the manipulation of AWN valve configurations during a permit inspection," and that he "was terminated *in material part* because of that refusal." (Mot. to Dismiss, Dkt. 12, at 13 (emphasis added by Defendants)). They point out that he also "alleges his age was the 'but-for cause' of his termination," that he "was terminated in retaliation for reporting sexual

harassment and hostile work environment conditions to HR," and that he was "terminated in retaliation for engaging in protected activity under the Clean Air Act." (*Id.* at 13–14). Defendants acknowledge that "alternative and inconsistent legal theories are generally permitted," but they argue that "the Fifth Circuit has long recognized that a party cannot maintain factual allegations in the same pleading that are 'mutually destructive' of one another." (*Id.* at 14).

Plaintiff responds that he "pleads these matters as separate or alternative causes of action under Fed. R. Civ. P. 8(d)(2)."[7] (Resp., Dkt. 20, at 5). The Court agrees; Plaintiff may plead "as many theories of relief [he] has, regardless of their consistency."[8] *See Fredonia Broad. Corp. v. RCA Corp.*, 481 F.2d 781, 801 (5th Cir. 1973). Nonetheless, his *Sabine Pilot* claim fails as currently pleaded. As described above, to sufficiently state a claim under this theory, he must have pleaded that his termination was **solely** caused by his refusal to perform an illegal act; he did not do so. (*See* Compl., Dkt. 1, at 31 (alleging that he was "terminated in material part because of that refusal")). The Court will therefore dismiss this claim without prejudice.

**v. Intentional Infliction of Emotional Distress Claim**

Finally, Defendants move to dismiss Plaintiff's claim for intentional infliction of emotional distress ("IIED"). (Mot. to Dismiss, Dkt. 12, at 15–16). They argue that, under Texas law, plaintiffs cannot assert claims for IIED where the alleged conduct is "covered by other tort or statutory causes of action." (*Id.* at 15). And, according to Defendants, Plaintiff's claims are all covered by

---

[7] Plaintiff's Response also claims that Defendants' motion "rel[ied] on cases such as *Marx v. Electronic Data Systems Corp.*, 418 S.W.3d 626 (Tex. App.—Amarillo 2009, no pet.) to argue Plaintiff has not stated a claim under *Sabine Pilot*." (Resp., Dkt. 20, at 5). In fact, Defendants never cited that case. To the extent this seemingly "hallucinated" citation in Defendants' motion is a result of Plaintiff's use of generative artificial intelligence tools, Plaintiff is strongly cautioned that future inaccurate citations may result in sanctions. *See* Fed. R. Civ. P. 11(b) (providing that attorneys *and* unrepresented parties, by filing a document with a court, "certif[y] to the best of the person's knowledge . . . [that the] claims, defenses, and other legal contentions are warranted" and providing for sanctions if Rule 11(b) has been violated).

[8] On the other hand, Plaintiff cannot recover damages on multiple theories "if one theory precludes the other or is mutually exclusive of the other." *See Fredonia Broad. Corp*, 481 F.2d at 801.

other causes of action: assault and battery; false imprisonment; defamation; conversion; statutory claims under the ADEA, Title VII, Texas Labor Code Chapter 21, and the Clean Air Act; and *Sabine Pilot*. (*Id.* at 16). The Court agrees with Defendants. The actions put forth by Plaintiff in his Response as falling within his IIED claim—nonconsensual touching of his genitals, physically blocking his exist, make false accusations, and his retaliatory termination—are each explicitly covered by his other claims. (*See* Resp., Dkt. 20, at 6). Though Plaintiff takes issue with the fact that Defendants are both "forc[ing] [him] to reply on claims that [they] are simultaneously trying to dismiss," (*id.*), Defendants are correct that an IIED claim is not permitted by Texas law under these circumstances, as the "gravamen of [his] intentional infliction complaint only alleges conduct that, if proven, would fit into and be addressed as another tort" or as a statutory violation. *See Carroll v. Emerald Residential Prop. Mgmt.*, 728 S.W.3d 742, 749 (Tex. App.—Eastland 2025, no pet.). This aspect of Texas law bars an IIED claim even if the plaintiff's alternative claim does not succeed. *See Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447–48 (Tex. 2004) (noting that a plaintiff's failure to establish a statutory claim "does not mean that the plaintiff has a claim for [IIED]"). The Court will therefore dismiss Plaintiff's IIED claim with prejudice, as permitting him to replead this claim would be futile. *See HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 345–36 (5th Cir. 2021) (dismissal with prejudice is appropriate where amendment is futile).

**B. Plaintiff's Motion to Proceed Under Pseudonym, to Seal Personal Identifying Information, and to Oppose Sealing by Defendants**

Plaintiff moves for leave to proceed under a pseudonym, for Plaintiff's personal identifying information to be sealed, and for a "declaration that Plaintiff opposes any motion by Defendants to seal, redact, or restrict public access to Defendants' own records." (Pseudonym Mot., Dkt. 10, at 1). Plaintiff's Certificate of Conference indicates that he "sought to confer" with Defendants regarding this motion by emailing it to them on April 8, 2026, but that they "had not responded." (*Id.* at 5). He then proceeded to file this motion on the same date. The Court finds that Plaintiff therefore failed

to meaningfully confer with Defendants regarding this motion. It is not appropriate to state that Defendants "failed to respond" after giving them less than one day to do so. The Court cautions Plaintiff that his *pro se* status does not exempt him from the requirement to "confer[] in a *good-faith attempt*" to resolve matters. *See* W.D. Tex. Loc. R. CV-7(g). In the future, the Court may dismiss future motions that were filed without a good-faith attempt to confer beforehand.

Nevertheless, the Court will rule on this motion and will deny it. First, the Court will not allow Plaintiff to proceed anonymously. The Court finds the Fifth Circuit's reasoning and holding in *Southern Methodist University Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979), applicable. In *Wynne & Jaffe*, the plaintiffs at issue were lawyers seeking to proceed anonymously on the basis that "disclosure of [their] identities [would] leave them vulnerable to retaliation from their current employers, prospective future employers," and the local legal community. *Id.* at 713. The Fifth Circuit noted that, generally, parties' identities "should not be concealed." *Id.* at 712. Rather, parties may only proceed anonymously "[u]nder special circumstances," such as when "'the issues involved are matters of a sensitive and highly personal nature,' such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families." *Id.* at 713. The Fifth Circuit determined that the lawyers in *Wynne & Jaffe* could not proceed anonymously, as they did not show "personal information of the utmost intimacy" was at issue, or admit that they either had violated state laws or government regulations or wished to engage in prohibited conduct." *Id.* Moreover, "[b]asic fairness dictate[d] that," since the defendant law firms were "stand[ing] publicly accused of serious violations of federal law," the plaintiffs themselves should also have to be publicly identified. *Id.* Finally, the Fifth Circuit reasoned that the lawyers "face[d] no greater threat of retaliation than the typical plaintiff alleging Title VII violations, including [those] who" filed suit "under their real names." *Id.*

The Court similarly finds in this case that Plaintiff has not shown sufficiently special circumstances to warrant allowing him to proceed anonymously. Though Plaintiff fears retaliation and claims that employers and recruiters in his industry may see his name on this lawsuit, causing "measurable harm to his employability," (Pseudonym Mot., Dkt. 10, at 3), this risk that future potential employers may find a whistleblower plaintiff's lawsuit generally exists in **all** whistleblower litigation. As in *Wynee & Jaffe*, Plaintiff has not shown no greater threat of retaliation than the typical plaintiff involved in litigation against a former employer. *See id.* at 713. Additionally, though Plaintiff claims that his allegations involve "sensitive personal allegations," the Court finds that his allegation—which specifically name his coworker accused of one-time inappropriate sexual contact—neither rise to the level of "the utmost intimacy" nor justify allowing him to proceed anonymously while keeping the coworker as a publicly named Defendant. *See id.*; *see also Doe v. Univ. of the Incarnate Word*, No. SA-19-CV-957-XR, 2019 WL 6727875, at *3 (W.D. Tex. Dec. 10, 2019). The Court will therefore deny Plaintiff's motion to proceed under a pseudonym.[9]

The Court will also deny Plaintiff's motion for his residential address, telephone number, and personal email address to be sealed from future public filings and from the docket. Plaintiff provides no reasons for *why* his contact information should be sealed to overcome the presumption of public access. *See Clark v. Cap. One Auto Fin.*, No. 4:21-CV-00269-SDJ-CAN, 2021 WL 12311042, at *2 (E.D. Tex. June 21, 2021). Moreover, in general, a plaintiff's "contact details are neither sensitive nor confidential." *See Quarles v. Traylor*, No. 3:25-CV-146-KHJ-MTP, 2026 WL 1698688, at *2 (S.D. Miss. Apr. 9, 2026). The Court will therefore deny this portion of his motion.

Finally, the Court also notes that Plaintiff's "opposition to any sealing of Defendant records" is not a proper motion. (Pseudonym Mot., Dkt. 10, at 3–4). Defendants have not sought to file any

[9] The fact that Plaintiff filed this lawsuit publicly, without a pseudonym, played no part in the Court's decision.

documents in a redacted form or under seal. As Defendants argue, the Court cannot adjudicate requests to file redacted or sealed documents that do not exist. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("[F]ederal courts do not adjudicate hypothetical or abstract disputes.").

**C. Plaintiff's Motion for Judicial Inquiry into Joint Representation**

When evaluating an attorney disqualification matter, federal courts sitting in Texas are instructed to apply the "canon of ethics developed by the American Bar Association," as well as the Texas Disciplinary Rules of Professional Conduct." *Centerboard Sec., LLC v. Benefuel, Inc.*, No. 3:15-CV-2611-G, 2016 WL 3126238, at *1 (N.D. Tex. June 3, 2016). District courts are meant to be hesitant in granting disqualification motions, as "[a] disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of his choosing." *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1316 (5th Cir. 1995). "As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former [or current] client moves for disqualification." *In re Yarn Processing Pat. Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976). Additionally, comment 17 to Rule 1.06 of the Texas Disciplinary Rules of Professional Conduct states that an opposing party may only raise an alleged conflict of interest where "the conflict is such as clearly to call in question the fair or efficient administration of justice." Tex. Disciplinary R. Pro. Conduct 1.06 cmt. 17.

Plaintiff moves for the Court to inquire into the relationship between Defense counsel and Defendants, arguing that joint representation of the corporate and individual Defendants is "fundamentally incompatible." (Representation Mot., Dkt. 15, at 2). He claims that "conflicts are inevitable" and that "there is a substantial risk that the individuals' personal defenses are [being] subordinated to the corporation's interests." (*Id.*). Defendants respond that Plaintiff filed this motion without conferring with them and that, regardless, he "lacks standing to seek disqualification

or judicial inquiry into the attorney-client relationship between Defendants and their counsel," and his arguments are purely speculative. (Resp., Dkt. 16, at 3, 5–8).

Plaintiff is neither a former nor current client of Defense counsel. Nor has Plaintiff shown the circumstances of this case clearly call into question the "fair or efficient administration of justice." *See* Tex. Disciplinary R. Pro. Conduct 1.06 cmt. 17. Indeed, it is extremely common in employment-related litigation for the same lawyers to represent a company and its employees. Furthermore, it is not enough that there is a hypothetical or remote possibility that a conflict will arise. *U.S. Fire Ins. Co.*, 50 F.3d at 1314, 1316 ("[D]isqualification is unjustified without at least a reasonable possibility that some identifiable impropriety actually occurred."). In the event a conflict does arise, it is Defense counsel's duty to raise it with the Court. (*See* Resp., Dkt. 16, at 7 ("If and when discovery reveals an actual conflict in the testimony or positions of the co-Defendants, the matter can be addressed at that time.")). *See also Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980) (attorneys "have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial."). The Court will therefore deny Plaintiff's motion for the Court to inquire into Defense counsel's joint representation of Defendants.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6), (Dkt. 12), is **GRANTED**, such that Plaintiff's IIED claim is **DISMISSED WITH PREJUDICE**, and Plaintiff's ADEA retaliation claim, Title VII claim, *Sabine*

*Pilot* wrongful termination claim, and Texas Labor Code Chapter 21 claim are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's Pseudonym Motion, (Dkt. 10), is **DENIED**.

**IT IS FINALLY ORDERED** that Plaintiff's Representation Motion, (Dkt. 15), is **DENIED**.

**SIGNED** on August 18, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE